# United States District Court
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DONYE CLINTON | § § § § | |
| v. | § | CIVIL ACTION NO. 3:17-CV-2981-S |
| | § § | |
| DALLAS INDEPENDENT SCHOOL DISTRICT and ALAN E. MILES | § § § § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendant Dallas Independent School District's ("Defendant" or "DISD") Motion to Dismiss [ECF No. 23]. For the reasons stated below, the Motion is granted.

### I. BACKGROUND

Plaintiff Donye Clinton ("Plaintiff") brings this case for disability discrimination that he allegedly experienced during his time as a student at Skyline High School ("Skyline"). Skyline is in DISD. Am. Compl. ¶ 5.

On October 29, 2015, Plaintiff was assaulted by another student while at school. *Id.* ¶ 7. After the assault, Plaintiff alleges that a DISD police officer, Alan Miles, "apprehended [Plaintiff] by slanging [sic] him head first into lockers located in the hallway at the school. Miles then placed [Plaintiff] into a chokehold with his forearm and dragged [Plaintiff] several feet down the hall and into a classroom." *Id.* ¶ 8. According to Plaintiff, "[h]e was held there against his will, violently attacked again by Miles . . . while no one was in the room, arrested, and subsequently charged with resisting arrest." *Id.* ¶ 9. Plaintiff was taken to the Henry Wade Juvenile Justice Center but was never criminally prosecuted. *Id.* ¶ 10. Upon release, Plaintiff was taken to Children's Hospital of Dallas, where he was

diagnosed with "neck pain, a bruised and busted lip, midline thoracic back pain, and assault by blunt force trauma." *Id.* ¶ 11.

After this incident, Plaintiff began seeing a psychiatrist. *Id.* ¶ 12. He was diagnosed with "Adjustment Disorder with Mood Adjustment, bi-polar disorder, and post-traumatic stress disorder." *Id.* As early as February 2016, Plaintiff's mother, Stephanie Clinton Randolph, "notified Skyline . . ., its counselors, principal, and assistant principal" of Plaintiff's diagnoses. *Id.* ¶ 15. Randolph requested accommodations for Plaintiff pursuant to § 504 of the Rehabilitation Act of 1973 ("§ 504") and the Americans with Disabilities Act of 2008 ("ADA"). *Id.*

Plaintiff alleges that he was never given a "504 plan"[1] even though counselors met and consulted with Plaintiff and Randolph. *Id.* ¶ 16. According to Plaintiff, "[o]nly after multiple meetings with DISD administration on or about August 7, 2017, September 21, 2017, and September 26, 2017, was [Skyline] made to orchestrate a [§ 504] plan for [Plaintiff]." *Id.* Plaintiff alleges that he had already suffered, inter alia, loss of educational opportunities, unjust discipline, and missed classes by this time. *Id.*

On May 12, 2017, Plaintiff was taken out of class after he was accused of drug use. *Id.* ¶ 17. Plaintiff was suspended, and he completed a class in alternative school that summer. *Id.* ¶ 18. Plaintiff alleges that he was denied enrollment in Skyline for his senior year and that the stated reason for the denial was that he had not completed the assigned class at the alternative school. *Id.* Plaintiff also alleges that he was denied admission because he and Randolph were homeless. *Id.* ¶ 19.

At some point, Skyline permitted Plaintiff to enroll. However, Plaintiff alleges that the assistant principal denied his credit for an art class, even though his "principal's plan" was completed

---

[1] "Like the [Individual Education Program], a § 504 Plan is the mechanism for providing a [free appropriate public education ("FAPE")] under § 504." *Lauren G. ex rel. Scott G. v. West Chester Area Sch. Dist.*, 906 F. Supp. 2d 375, 391 (E.D. Pa. 2012) (citing *Centennial Sch. Dist. v. Phil L. ex rel. Matthew L.*, 799 F. Supp. 2d 473, 490 (E.D. Pa. 2011)).

and the art teacher had approved the credit and signed the required paperwork. *Id.* ¶ 20. According to Plaintiff, "[t]his caused [Plaintiff] to be denied senior status and to consequently miss his senior picnic[] and other senior activities which were scheduled in the fall of 2017." *Id.* ¶ 21. Plaintiff allegedly was denied participation on the football team for not completing DAEP.[2] *Id.* ¶ 22. "After finally accepting his proof of completion, Randolph was allowed to make [Plaintiff's] schedule on August 25, 2017. However, after school started, [Plaintiff] was again taken off the roll in his classes." *Id.* Plaintiff again alleges that he was "refused playing time in football and barely played in any games." *Id.* ¶ 23.

On February 16, 2018, an adult Skyline hall monitor, Dennis Ford, allegedly followed Plaintiff to Carter High School, waited for Plaintiff to get off the bus he was riding, "cursed him out, harassed him, and tried to physically assault [him]." *Id.* ¶ 24. Ford allegedly charged at and tried to fight Plaintiff but was "thwarted" by Plaintiff's grandmother and sister. *Id.* Ford and his daughter told administrators that Plaintiff hit Ford's daughter with a bottle and cursed out and threatened to fight the bus driver. *Id.* Plaintiff was suspended. *Id.* He appealed his suspension. *Id.* The bus driver denied that the incident ever occurred, and video on the bus confirmed that Plaintiff did not verbally or physically assault anyone. *Id.* ¶ 25.

On March 7, 2018, "after being cursed out and berated by a female student, [Plaintiff] was given two referrals and suspended." *Id.* ¶ 26. The referrals alleged that Plaintiff cursed at staff members and caused a classroom disruption. *Id.* Plaintiff was suspended for three days, and Plaintiff again appealed his suspension. *Id.* The suspension was ultimately withdrawn, allegedly because the referrals were false and because the offenses were "level 1" offenses, which do not warrant a suspension. *Id.* Plaintiff claims that he missed school on the three days of his suspension and that those absences were counted as unexcused absences. *Id.*

---

[2] Plaintiff does not define DAEP, but the Court assumes he is referring to a Disciplinary Alternative Education Program. *See* TEX. EDUC. CODE ANN. § 103.1201(a).

3

On March 26, 2018, Plaintiff alleges that he was hit on the back of his head by another student. *Id.* ¶ 27. Plaintiff "defended himself." *Id.* Plaintiff was taken to the nurse and accused of marijuana use "with absolutely no evidence, besides the smell." *Id.* ¶ 28. Plaintiff was suspended for three days. *Id.* ¶ 29. On March 27, 2018, Randolph contacted a member of the DISD Board of Trustees to seek reformative action, but nothing happened. *Id.* ¶ 30. As of the filing of his Amended Complaint, Plaintiff contends that he "continues to miss school unjustly and suffer harassment, discrimination, and retaliation because of the policies, lack of policies, and lack of training sponsored by DISD." *Id.* ¶ 31.

Based on the foregoing allegations, Plaintiff brings claims against DISD under the ADA; § 504, the Civil Rights Act of 1964, the Fourteenth Amendment, and 42 U.S.C. § 1983. Defendant moves to dismiss all of Plaintiff's claims for lack of subject-matter jurisdiction and, in the alternative, for failure to state a claim.

## II. ANALYSIS

### A. *Subject-Matter Jurisdiction*

Defendant first moves to dismiss for lack of subject-matter jurisdiction, arguing that the Individuals with Disabilities Education Act ("IDEA") governs Plaintiff's claims and requires administrative exhaustion. It is undisputed that Plaintiff did not exhaust administrative remedies under the IDEA.

Under the Constitution, a federal court may decide only actual cases or controversies. U.S. CONST. art. III, § 2. A court properly dismisses a case where it lacks the constitutional power to decide it. *See Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Dismissal for lack of subject matter jurisdiction is warranted when "it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Gilbert v. Donahoe*, 751 F.3d 303, 307 (5th Cir. 2014) (quoting *Ramming v. United States*,

4

281 F.3d 158, 161 (5th Cir. 2001)). The party asserting jurisdiction bears the burden of proving that jurisdiction exists. *Ramming*, 281 F.3d at 161. "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Id.*

i. *IDEA Exhaustion*

"[A] complaint based on [the IDEA] is not a justiciable controversy until the plaintiff has exhausted his administrative remedies or proved that exhaustion would be futile or inadequate." *Gardner v. Sch. Bd. Caddo Par.*, 958 F.2d 108, 112 (5th Cir. 1992). Failure to exhaust administrative remedies deprives the courts of subject-matter jurisdiction.[3] *Wood v. Katy Indep. Sch. Dist.*, Civ. A. No. H-09-1390, 2010 WL 11417849, at *3 (S.D. Tex. Sept. 27, 2010).

The exhaustion requirement is not limited to claims expressly brought under the IDEA. *Hooker*, 2010 WL 4025877, at *6. Section 1415(*l*) of the IDEA addresses the IDEA's relationship with other laws protecting children. *Fry v. Napoleon Cmty. Schs.*, 137 S. Ct. 743, 748 (2017).

> Section 1415(*l*) makes clear that nothing in the IDEA "restrict[s] or limit[s] the rights [or] remedies" that other federal laws, including antidiscrimination statutes, confer on children with disabilities. At the same time, the section states that if a suit brought under such a law "seek[s] relief that is also available under" the IDEA, the plaintiff must first exhaust the IDEA's administrative procedures.

*Id.* To meet this standard, the *Fry* court held, "a suit must seek relief for the denial of a FAPE, because that is the only 'relief' the IDEA makes 'available.'" *Id.* at 752. Broadly stated, a FAPE requires "an educational program reasonably calculated to enable a child to make progress

---

[3] The Court acknowledges that the Supreme Court has indicated that claims-processing rules should not be considered jurisdictional absent clear legislative intent. *Hooker v. Dall. Indep. Sch. Dist.*, Civ. A. No. 3:09-CV-1289-D, 2010 WL 4025877, at *6 (N.D. Tex. Oct. 13, 2010) (collecting cases). However, the Fifth Circuit has interpreted the IDEA's exhaustion requirement to be jurisdictional. *Id.* (citing *Gardner*, 958 F.2d at 112). District Courts must follow "a legally indistinguishable decision of the Fifth Circuit . . . unless overruled *en banc* or by the United States Supreme Court." *Id.* at *6 n.13 (quoting *MCI Telecomms. Corp. v. United Showcase, Inc.*, 847 F. Supp. 510, 512 (N.D. Tex. 1994)). Regardless, the effect of the Court's decision is the same whether it deems the exhaustion requirement to be jurisdictional or an element of Plaintiff's claim.

appropriate in light of the child's circumstances." *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 1001 (2017).

The *Fry* court further held that in determining whether a suit seeks relief for the denial of a FAPE, "a court should look to the substance, or gravamen, of the plaintiff's complaint." 137 S. Ct. at 752. "One clue to whether the gravamen of a complaint against a school concerns the denial of a FAPE, or instead addresses disability-based discrimination, can come from asking a pair of hypothetical questions." *Id.* at 756.

> First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school—say, a public theater or library? And second, could an *adult* at the school—say, an employee or visitor—have pressed essentially the same grievance?

*Id.* If the answer to both questions is "yes," the complaint is unlikely to be about the denial of a FAPE. *Id.* "But when the answer is no, then the complaint probably does concern a FAPE, . . . for the FAPE requirement is all that explains why only a child in the school setting . . . has a viable claim." *Id.*

With this framework in mind, the Court turns to Plaintiff's specific claims.

    a.    *Section 504 and ADA Claims*

Section 504 provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). Similarly, the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

Here, Plaintiff's § 504[4] and ADA claims are based on allegations that DISD "allowed [Plaintiff] to be treated unfairly," had a "custom of allowing unqualified counselors to choose who has a disability," denied Plaintiff a § 504 plan, failed to provide "appropriate educational attention," and failed to provide "certain accommodations," including in the realm of discipline.[5] Am. Compl. ¶¶ 34-35.

Applying the *Fry* analytical framework, the Court finds that the bulk of Plaintiff's claims seek relief for denial of a FAPE. Plaintiff's claim that "unqualified counselors" decided which students had a disability is akin to a claim that he was not identified as a student with a disability. This allegation seeks relief available under the IDEA. *See Ripple v. Marble Falls Indep. Sch. Dist.*, 99 F. Supp. 3d 662, 686 (W.D. Tex. 2015). Similarly, Plaintiff's allegations that he did not receive a § 504 plan, "appropriate educational attention," or "certain accommodations" are educational in scope and seek relief that is available under the IDEA. *See id.* at 687 (holding that allegations that school district failed to make reasonable accommodations and modifications to its programs sought relief available under IDEA); *see also E.R. ex rel. S.R. v. Spring Branch Indep. Sch. Dist.*, Civ. A. No. 4:16-CV-0058, 2017 WL 3017282, at *35 (S.D. Tex. June 15, 2017) ("[Plaintiff] claims discrimination because of the scope of education she received while attending . . . school. These allegations overlap with the IDEA claims and Plaintiffs were required to first exhaust their administrative remedies for this action."), *adopted by* 2017 WL 3016952 (S.D. Tex. July 14, 2017).

It is somewhat unclear whether Plaintiff's claim that DISD "allowed [Plaintiff] to be treated unfairly" seeks relief available under the IDEA because it is unclear what facts Plaintiff relies on

---

[4] It is unclear whether Plaintiff intends to bring a § 504 claim, as his first cause of action is titled "Violation of the [ADA]." Am. Compl. § IV.A. However, Plaintiff references a "504 plan" and "a violation of section 504," so the Court will proceed with its analysis as though Plaintiff has brought a § 504 claim. *Id.* ¶ 34.

[5] Elsewhere in the Amended Complaint, Plaintiff alleges that DISD "does nothing to ensure that students with disabilities are disciplined according to an established [§] 504 plan." *Id.* ¶ 46.

7

in making this claim. However, a review of the factual allegations of the Amended Complaint reveals that all are educational in nature. Plaintiff allegedly was suspended, denied enrollment in Skyline, denied credit for an art class, denied senior status, forced to miss senior activities, and denied participation on the football team.[6] None of these claims could have been brought by a nonstudent or outside the school setting. Plaintiff contends that the claims are noneducational because "[h]e never alleges that . . . DISD failed to provide some corrective educational remedy to redress his harm[.]" Resp. 3. But, "the substance of a claim rather than the form of relief sought determines whether exhaustion is required." *Doe v. Dall. Indep. Sch. Dist.*, 194 F. Supp. 3d 551, 560 (N.D. Tex. 2016). The substance of Plaintiff's ADA and § 504 claims concerns the denial of a FAPE; therefore, the Court finds that Plaintiff was required to administratively exhaust his ADA and § 504 claims. Because he failed to do so, the Court lacks subject-matter jurisdiction over these claims.

b. *Civil Rights Act of 1964*

Plaintiff does not specify which section of the Civil Rights Act of 1964 he is bringing a claim under, but the Court, like Defendant, presumes that his claim hinges on Title VI. Title VI states that "[n]o person . . . shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

The Court cannot evaluate whether Plaintiff was required to exhaust his Title VI claim because Title VI, on its face, does not apply to Plaintiff's claims. Title VI prohibits discrimination on the basis of race, color, or national origin. Plaintiff's Amended Complaint relies solely on

---

[6] While football is an extracurricular activity, the Court finds that Plaintiff's allegations about being denied participation or playing time on the football team "are intertwined with his complaints about the school's failure to accommodate his educational needs." *Wellman v. Butler Area Sch. Dist.*, 877 F.3d 125, 134 (3d Cir. 2017).

disability discrimination. Further, Plaintiff does not mention Title VI (or any other provision of the Civil Rights Act of 1964) in his Response to Defendant's Motion to Dismiss. Thus, Plaintiff has abandoned this claim. *See Brackens v. Ocwen Loan Servicing, LLC*, Civ. A. No. 3:13-CV-3458-L, 2015 WL 1808541, at *4 (N.D. Tex. Apr. 21, 2015) ("Because Plaintiff failed to address Defendant's arguments in a response, he has abandoned his . . . claim." (citing *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006))).

c. *Section 1983 and the Fourteenth Amendment*

Plaintiff's § 1983 claim is premised on alleged deprivations of equal protection and procedural due process under the Fourteenth Amendment. Plaintiff alleges that (1) the "policy and custom endorsed by [DISD's] Board of Trustees allows administrators the unfettered ability to arrest and suspend students with no due process"; (2) Plaintiff was suspended (and, thus, deprived of school days and senior activities) multiple times but later found to be not at fault; and (3) "[t]he written discipline policy allows for the discipline officer to unilaterally determine punishment, and does nothing to ensure that students with disabilities are disciplined according to an established [§] 504 plan." Am. Compl. ¶¶ 44-46.

With the exception of the claims relating to Plaintiff's arrest, the Court finds that Plaintiff's constitutional claims, brought pursuant to § 1983, concern the denial of a FAPE. "Complaints concerning the general disciplinary practices of a school district have been understood to relate to the way that the district provides education and 'thus necessarily come within the scope of the IDEA.'" *S.S. ex rel. Stutts v. E. Ky. Univ.*, 307 F. Supp. 2d 853, 857-58 (E.D. Ky. 2004) (citing *Covington v. Knox Cty. Sch. Sys.*, 205 F.3d 912, 916 (6th Cir. 2000)), *vacated and remanded on other grounds*, 125 F. App'x 644 (6th Cir. 2005). At least one court in the Fifth Circuit has found that constitutional claims relating to a suspension "allege[d] harm to [the student's] education as

well as violations of his constitutional rights" and thus "could have been brought under the IDEA." *Garcia v. City of McAllen*, Civ. A. No. 7:13-CV-460, 2013 WL 6589426, at *5 (S.D. Tex. Dec. 16, 2013).

Further, asking the hypothetical questions provided by the *Fry* court, the Court finds that the bulk of these claims could not have been brought by a nonstudent or outside the school setting. Therefore, with one exception, the Court finds that Plaintiff's § 1983 claims predicated on constitutional violations are subject to § 1983's exhaustion requirement. Plaintiff has not exhausted these claims, so the Court lacks subject-matter jurisdiction.

Plaintiff's claims relating to the events surrounding his arrest, however, could have been brought by a nonstudent and could have been brought outside the school setting. Therefore, Plaintiff was not required to exhaust these claims, and the Court has subject-matter jurisdiction over them.

ii. *Futility or Inadequacy*

In his Response, Plaintiff argues that even if his claims are subject to exhaustion under the IDEA, such exhaustion would be futile and inadequate. Resp. 5. First, Plaintiff argues that allegations related to his physical safety at school could not be adequately remedied by the IDEA. The only allegations relating to Plaintiff's physical safety are those regarding Plaintiff's encounter with and subsequent arrest by Miles, which the Court has already found to be outside the scope of the IDEA exhaustion requirement. Because the Court found that Plaintiff did not need to exhaust these claims, it need not address Plaintiff's argument that exhaustion would be futile or inadequate.

Second, Plaintiff argues that "subjecting [him] to exhaustion would be futile because [he] has since graduated." Resp. 6. The Fifth Circuit has not addressed the effect of graduation on the exhaustion requirement. However, "the majority of circuits that have addressed the question

[have] found that plaintiffs cannot sidestep the exhaustion requirements by seeking non-IDEA relief after the plaintiff has graduated, where IDEA relief could have remedied the injury while the plaintiff was in school." *Ripple*, 99 F. Supp. 3d at 688 (citing *McCormick v. Waukegan Sch. Dist. No. 60*, 374 F.3d 564, 568 n.2 (7th Cir. 2004)). The only circuit court to hold otherwise is the Sixth Circuit. *See Covington*, 205 F.3d at 917. But, *Covington* involved "unique circumstances," and the *Covington* plaintiff underwent the IDEA administrative process before resorting to federal court. *Id.* at 914, 917 (noting that, although plaintiff requested due process hearing under IDEA, hearing was "repeatedly scheduled, delayed, and rescheduled" over course of three years).

Here, by contrast, "Plaintiff ignored the IDEA process entirely." *Ripple*, 99 F. Supp. 3d at 689. Further, "the injuries sustained by Plaintiff could have been remedied by the IDEA process, unlike the injuries in *Covington*, where 'damages would have been the only adequate remedy even had he sought immediate relief at the time of the wrongdoing' because '[n]othing could "undo" the harm that he had suffered.'" *Id.* (quoting *Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 490 (2d Cir. 2002)). The Court finds that Plaintiff's choice not to avail himself of the IDEA process while he was still a student does not trigger the IDEA's futility exception.

Finally, Plaintiff contends that IDEA exhaustion would be futile because "money damages are the only remedy that can make him whole." Resp. 7. Most of the circuit courts that have ruled on this issue "have found that a prayer for money damages is, alone, insufficient to bypass the IDEA's exhaustion requirement." *Ripple*, 99 F. Supp. 3d at 689-90 (collecting cases). District courts within the Fifth Circuit generally have followed this majority approach. *See, e.g., id.* at 690; *Oliver v. Dall. Indep. Sch. Dist.*, No. 3:01-CV-2627, 2004 WL 1800878, at *5 (N.D. Tex.

Aug. 11, 2004). The Court finds this precedent persuasive and holds that mere request for money damages does not render the IDEA's exhaustion requirement futile in this case.

Accordingly, with the exception of Plaintiff's claims regarding his arrest and the events surrounding that arrest, the Court finds that Plaintiff's ADA, § 504, and constitutional claims are barred by the IDEA's exhaustion requirement. The Court grants Defendant's Motion to Dismiss with regard to those claims.

### B. *Failure to State a Claim*

#### i. *ADA and § 504*

Neither Plaintiff nor Defendant addressed the merits of Plaintiff's ADA and § 504 claims in their briefing on the Motion to Dismiss. For this reason, and because the Court lacks subject-matter jurisdiction over these claims, the Court will not analyze whether Plaintiff has stated a claim upon which relief can be granted.

#### ii. *Civil Rights Act of 1964*

As discussed above, Plaintiff fails to state a claim for discrimination under the Civil Rights Act of 1964. Title VI prohibits discrimination on the basis of race, color, or national origin. Plaintiff's Amended Complaint relies solely on disability discrimination. Further, Plaintiff has abandoned this claim.

#### iii. *Section 1983 and the Fourteenth Amendment*

Plaintiff purports to bring separate causes of action for "Violation of the Equal Protection Clause" and "Liability under 42 U.S.C. § 1983." Am. Compl. §§ C, D. However, "[§] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). "The first step in any such claim is to identify the

specific constitutional right allegedly infringed." *Id.* (citations omitted). The Court interprets the Amended Complaint as asserting a § 1983 claim predicated upon an alleged violation of the Fourteenth Amendment.

To state a § 1983 claim, Plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Leffall v. Dall. Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir. 1994) (citations omitted). To ascribe liability to DISD, which is considered a local governmental unit for § 1983 purposes, Plaintiff must also allege that an "official policy or custom" of DISD "was a cause in fact of the deprivation of rights inflicted." *Id.* (citing and quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978)). DISD "may not be held liable under § 1983 under a theory of *respondeat superior*." *Id.* (citations omitted).

First, Defendant argues that the Amended Complaint does not state a Fourteenth Amendment equal protection or procedural due process claim. "[W]ithout an underlying constitutional violation, there can be no § 1983 liability imposed on the [defendant]." *Becerra v. Asher*, 105 F.3d 1042, 1048 (5th Cir. 1997) (emphasis omitted).

a.  *Equal Protection*

To state a claim under the Equal Protection Clause, Plaintiff must allege that (1) he "received treatment different from that received by similarly situated individuals" and (2) "the unequal treatment stemmed from a discriminatory intent." *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 412 (5th Cir. 2015) (quoting *Priester v. Lowndes Cty.*, 354 F.3d 414, 424 (5th Cir. 2004)). To establish discriminatory intent, Plaintiff must show "that the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group." *Id.*

13

As discussed above, Plaintiff only alleges that he was discriminated against because of his disability. Disability is not a suspect class for purposes of equal protection. *Wood*, 2010 WL 11417849, at *5 (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 442 (1985)). Like the *Wood* plaintiffs, Plaintiff here does not "identify a specific group of disabled students denied equal protection, but, rather, simply allege[s] discrimination against all student[s] with disabilities." *Id.*; *see also, e.g.*, Am. Compl. ¶ 41 ("It was only after [Plaintiff] was ... diagnosed with mental disorders that he was subjected to disparate, separate, and unequal treatment by DISD. Other students without disabilities have not been treated as [Plaintiff]."). Therefore, Plaintiff fails to state a claim for a violation of the Equal Protection Clause.

b.   *Due Process*

To state a claim under the Due Process Clause, Plaintiff "must first identify a life, liberty, or property interest protected by the Fourteenth Amendment and then identify a state action that resulted in a deprivation of that interest." *Blackburn v. City of Marshall*, 42 F.3d 925, 935 (5th Cir. 1995) (citing *San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 700 (5th Cir. 1991)). Students have a property interest in their education, *Goss v. Lopez*, 419 U.S. 565, 574 (1975).[7]

The Court assumes that the property interest upon which Plaintiff bases his claims is his interest in his education. Plaintiff lists several actions that allegedly resulted in a deprivation of that interest: suspensions, other disciplinary actions, and his arrest. The Court previously found that it lacks subject-matter jurisdiction over Plaintiff's claims connected with his suspensions and related disciplinary actions.

---

[7] Texas created a property interest by enacting laws providing a free education to all Texas children. *Salas v. United Indep. Sch. Dist.*, Civ. A. No. L-08-22, 2009 WL 1035068, at *2 n.1 (S.D. Tex. Apr. 17, 2009) (citing TEX. EDUC. CODE ANN. §§ 4.001, 25.001, 25.085).

Even if the Court had jurisdiction over these claims, however, the Court finds that Plaintiff has not pleaded a viable claim. First, Plaintiff cannot state a claim based on disciplinary actions related to his suspensions, such as the denial of senior status, denial of playing time in football, and assignment to an alternative school. Plaintiff does not have a protected liberty or property interest in such extracurricular activities or ceremonial events. *See, e.g., Niles v. Univ. Interscholastic League*, 715 F.2d 1027, 1031 (5th Cir. 1983) ("[N]o constitutional right exists to participate in interscholastic sports."); *Williams v. Austin Indep. Sch. Dist.*, 796 F. Supp. 251, 255 (W.D. Tex. 1992) ("'[W]alking across the stage' [at graduation] certainly does not rise to the level of a constitutionally protected property interest any more than attending one's high school prom . . . ."). And, "placement in an alternative education program does not deprive students of their [property] interest [in education]." *Salas*, 2009 WL 1035068, at *2 (citation omitted).

Second, Plaintiff cannot state a claim based on his suspensions. "[A] student may not be suspended from public school without the 'minimum procedures' required by the due process clause." *Id.* (quoting *Goss*, 419 U.S. at 574). "Students must be given notice, an explanation of the evidence, and an opportunity to present their side of the story." *Id.* (citing *Goss*, 419 U.S. at 581). Plaintiff does not plead that he was deprived of these minimum procedures. In fact, in connection with each suspension, Plaintiff affirmatively pleads at least that he was given notice of the charges against him. *See, e.g.*, Am. Compl. ¶ 17 ("Plaintiff . . . was taken again from class, after being accused of drug use . . . ."). And, in most cases, Plaintiff pleads that he was given an explanation of the evidence. *See, e.g., id.* ¶¶ 28-29 ("[Plaintiff] was then accused of marijuana use, with absolutely no evidence, *besides the smell* . . . . [Plaintiff] was again suspended for three days." (emphasis added)). Plaintiff never alleges that he was not given notice, an explanation of

the evidence, and an opportunity to present his side of the story, and he does not address Defendant's argument on these points in his Response to the Motion to Dismiss.

### c. *Municipal Liability*

Defendant does not address Plaintiff's claims predicated on his arrest, so the Court will assume that Plaintiff (1) has successfully alleged a violation of a right secured by the Constitution with regard to his arrest and (2) has demonstrated that the alleged deprivation was committed by a person acting under color of state law. However, the analysis does not end there, as Plaintiff must establish a basis for imposing liability on DISD. Municipal liability under § 1983 has three required elements: "a policymaker; an official policy [or a custom]; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (quoting *Monell*, 436 U.S. at 694). "Under Texas law, the final policy-making authority in an independent school district rests with the district's board of trustees." *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1304 (5th Cir. 1995) (citing *Jett v. Dall. Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir. 1993)).

Plaintiff fails to state a claim under § 1983 for constitutional violations in connection with his arrest because he does not identify any specific policy or custom. Plaintiff alleges that "[t]he policy and custom endorsed by the Board of Trustees allows administrators the unfettered ability to arrest and suspend students with no due process." Am. Compl. ¶ 44. Plaintiff does not identify the policy and/or custom to which he is referring. This allegation does not "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Plaintiff also alleges that "[t]he written discipline policy allows for the discipline officer to unilaterally determine punishment, and does nothing to ensure that students with disabilities are disciplined according to an established [§] 504 plan." Am. Compl. ¶ 46. However, Plaintiff has

not described the policy or its relationship to the constitutional violations of which he complains. *See Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) ("The description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." (citation omitted)).

For the foregoing reasons, the Court finds that Plaintiff has failed to state a § 1983 claim for violations of his rights under the Fourteenth Amendment.

### III. CONCLUSION

Because the Court lacks subject-matter jurisdiction over all of Plaintiffs' claims except his arrest-related constitutional claims, the Court grants Defendant's Motion to Dismiss and dismisses Plaintiff's ADA, § 504, and non-arrest-related § 1983 claims without prejudice. Because Plaintiff has failed to state a Civil Rights Act of 1964 claim or a § 1983 claim with regard to his arrest, the Court dismisses these claims without prejudice.

Plaintiff has not sought leave to amend. If Plaintiff wishes to amend his Civil Rights Act of 1964 or arrest-related § 1983 claims, he must seek leave to file an amended complaint by April 30, 2019. If a motion for leave to file, with the proposed amended complaint attached, is not filed by this date, Plaintiff's claims will be dismissed with prejudice. Because Plaintiff has not exhausted administrative remedies with respect to the remainder of his claims, the Court finds that amendment would be futile. *See Ballard v. Devon Energy Prod. Co.*, 678 F.3d 360, 364 (5th Cir. 2012) ("Denial of leave to amend may be warranted for . . . futility of a proposed amendment." (citation omitted)).

**SO ORDERED.**

SIGNED March 27, 2019.

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**